FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLES DISTRICT OF FLORIDA

04 SEP 15 PM 3:24

CASE NO. 2:04-CV-463-FTM-29DNF

CLERK US DISTRICT COURT
FT. MYERS, FLORIDA

M. RICHARD MELLON, and
DIESEL, LTD., an Oregon Corporation

    Plaintiffs,

v.

WCI COMMUNITIES, INC., a Delaware Corporation, and HAMMOCK DUNES REAL ESTATE COMPANY, a Florida Corporation,

    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs allege upon information and belief (said information and belief being based, in part, upon the investigation conducted by and through their undersigned attorneys), except as to those paragraphs relating to the Plaintiffs, which are alleged upon personal knowledge, as follows:

1.    This Court has subject matter jurisdiction over the action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.A. § 78aa; and 28 U.S.C. § 1331 and the interwoven and related state law claims pursuant to 28 U.S.C. § 1367.

2.    Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act in that Defendant, WCI Communities, Inc. has its corporate headquarters and transacts substantial business in the district and Defendant, Hammock Dunes Real Estate Company transacts business in the district and because many of the acts, transactions, and occurrences alleged herein, including the preparation, issuance and dissemination of materially false and misleading information, occurred, at least in part, in this district.

3.    In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including mails and telephone communications.

Prolaw:10256

## THE PARTIES

4. Plaintiff, M. Richard Mellon ("Mellon") is a resident of Collier County, Florida.

5. Plaintiff, Diesel, Ltd. ("Diesel") is an Oregon corporation and conducts business in, amongst other places, Collier and Lee County, Florida. Diesel is wholly owned by Mellon and was assigned Mellon's purchase contracts for units 501 and 601 in the Savona.

6. Defendant WCI Communities, Inc. ("WCI") is a Delaware Corporation and builder and developer of residential communities in Florida and in particular Palm Coast, Florida.

7. Defendant, Hammock Dunes Real Estate Company ("Hammock Dunes") is a Florida corporation, and is either owned, operated and controlled by or under the direct influence of Defendant, WCI, and as such is the alter ego of WCI, so that the act of one constitutes the act of the other.

## GENERAL ALLEGATIONS

8. Plaintiffs and Defendant WCI executed the two investment contracts on or about September 17, 2002.

9. On or before September 17, 2002, Defendant, WCI through Hammock Dunes its duly authorized agent, servant and representative, operating within the scope of their real or apparent authority, offered Plaintiffs an investment opportunity. In particular, the available investment opportunity consisted of contracts for the purchase of unbuilt condominium units nos. 501 and 601 in the Savona Condominium in a development known as Hammock Dunes. Attached hereto as **Exhibits "A" and "B"** are copies of the sales contracts executed by Plaintiff, Mellon, and Defendant, WCI. Only portions of the Sales Contract for unit no. 601 are attached, as this document is substantially similar to **(Exh. "A")** except for the unit no. and price. Further, as a substantial inducement for Plaintiff, Mellon, to make the investment Defendants represented to Plaintiff, Mellon that:

a. Defendant, WCI, was going to maintain control of the community and construct additional amenities in the community which would increase the value of the sales contracts;

b. the sales contracts were part of an overall package and through the continuing efforts of the Defendant, WCI, that the value of the contracts would increase;

c. based solely on the continuing efforts of the Defendant, WCI, and the past "track record" of the other condominiums and towers constructed and developed by the Defendant, WCI, that the value of Plaintiffs' two executed sales contracts would increase in value.

d. the Plaintiff, Mellon, would be able to sell or transfer his executed sales contracts for a profit prior to the units being built;

e. the Plaintiffs would not be required to close the sale of either tower residence no. 501 or no. 601;

f. the profits obtained by previous investors in an adjacent tower condominium within the Hammock Dunes Development exceeded $600,000.00 per unit and that the Plaintiffs could expect a similar return on their investment in the Savona purchase contracts;

g. construction of the underlying condominium units would be complete and that the closings on the sales contracts would occur prior to October, 2003 and thus Plaintiffs would realize his return of profit prior to October of 2003.

h. the Defendant, WCI, would be improving the Hammock Dunes Community during the time that the Savona tower residences were being constructed and that based on the expenditures of Defendant, WCI, in

community improvements, Plaintiffs' sales contracts would increase in value and would be desirable for sale prior to October, 2003;

i. investors that executed sales contracts would not have to close on or occupy a unit to realize a profit from the investment;

j. Defendants are experts in up scale residential communities, and as the reputation of the Defendant, WCI is well known, the Defendants assured the Plaintiffs that Plaintiffs' profits would be realized because of the reputation of the Defendant, WCI and the efforts of the Defendant, WCI in building and developing the Hammock Dunes Community;

k. by Plaintiff, Mellon executing the purchase contracts that Plaintiff, Mellon was also acquiring a commitment from the Defendants and an interest in the continued development of the Hammock Dunes Community by the Defendant, WCI;

l. Defendant assured Plaintiffs that the Defendant would work to increase the value of the community, through its efforts and expertise, and thus the value of Plaintiffs' investment would likewise be increased through no involvement or effort of the Plaintiffs;

m. unit nos. 501 and 601 were ocean front and would always have a clear, unobstructed view of the Atlantic Ocean and beach, and that nothing would ever be built between the Savona and the Atlantic Ocean.

n. in addition to development of the Savona, WCI offers to investors the surrounding communities, services and amenities that serve to increase the value of the resale potential of the residential communities. At all times relevant hereto, the Defendants intended for Plaintiffs, consumers in general and investors in general to rely on the development and value

enhancing activities of WCI, as WCI had sole control over the adjacent and incident development.

10. During all phases of the construction of the Savona tower residences and development of the Hammock Dunes Community, WCI retained control and decision making over the development and marketed the development and its investment opportunities to consumer investors intending them to rely on the expertise of WCI in increasing the value of the real estate investment.

11. At all times relevant hereto, the Defendants knew the purchases made by Plaintiffs were solely for investment purposes and at no time did Plaintiffs intend to utilize the properties for their own use, or ever intend to use the related Savona tower residences for this purpose.

12. At the time that the Defendants induced Plaintiff, Mellon to execute the two sales contracts (for unit nos. 501 and 601) the building now known as the Savona did not exist.

13. At all times relevant hereto, the Defendants intended Plaintiffs' contracts to be entirely dependent upon WCI's development of the Hammock Dunes Community and the Savona tower residences. Further, the Defendants intended the increase of value in the contracts executed by Plaintiff, Mellon to be directly linked to the common improvements made to the property and surrounding community being developed by WCI.

14. WCI maintained control over the improvements to the property and surrounding amenities.

15. WCI relied on the pooling of assets of Plaintiffs and other investors in making preconstruction commitments to purchase units, so that there was horizontal commonality of investments tying each investor's investment to investments of other investors, and the promise of increase in value by WCI.

16. At all times relevant hereto, the Defendants represented the future development plans of the Defendant, WCI to Plaintiffs in a manner calculated to induce investment in the

contracts, and in essence, sold to Plaintiffs, and induced Plaintiff, Mellon to execute sales contracts for the purchase of units at the Savona tower residences, with the contractual promise to carry through WCI's development plans to augment the value of investments. The Defendants specifically represented to Plaintiffs that the Defendant, WCI was continuing its development of luxury golf courses, club houses, fitness centers, and other luxury amenities, that when viewed in conjunction with Plaintiffs' executed sales contract would substantially increase the value of Plaintiffs' investment.

17. The Defendants intended Plaintiffs to rely on these representations and Plaintiff did so rely.

18. The Hammock Dunes Community and the Savona tower residences were part of a common enterprise that through the efforts of the Defendants was represented to generate profits for Plaintiffs and an increase the value of Plaintiffs' investment. The development of the Hammock Dunes Community and the Savona tower residences in particular were an ongoing business enterprise, wherein Plaintiffs were induced to rely on the representations of WCI's continued development and improvements of the community and the increase in the investment value of Plaintiff.

## COUNT I – VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

19. Plaintiffs incorporate by reference and reallege paragraphs 1 through 18 above as if set forth herein at length.

20. This claim is asserted by all Plaintiffs against all Defendants and is based upon Section 10(b) of the 1934 Act, 15 U.S.C.A. § 78j(b) and Rule 10b-5 promulgated thereunder.

21. The Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct and conspiracy to conceal adverse material information as specified herein. Defendants recklessly engaged in acts, practices, and a course of conduct as herein alleged in an effort to maintain artificially high prices for securities of the

Defendant, WCI. This included the formation, making of and/or participating in the making of untrue statements of material facts and the omission and failure to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

22. Defendants' acts and practices operated as a fraud and deceit upon Plaintiff by creating expectations of optimism which were unrealistically favorable in light of their knowledge or reckless disregard of the truth in connection with the purchase of WCI securities by Plaintiff.

23. The price of WCI sales contracts was artificially inflated throughout by the Defendants' omissions and misrepresentations.

24. The statements particularized above were false and misleading when made by the Defendants, and/or in the name of WCI. By making these statements, the Defendants recklessly created a false and misleading impression which artificially inflated the price of WCI sales contracts. The Defendants, who were under a duty to make truthful and complete disclosures, instead misrepresented or concealed material facts.

25. The Defendants misrepresentations were made in connection with an initial offering of the sales contracts to the public

26. The Defendants made the statements identified above which were materially false and misleading in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. These statements were materially false and misleading and omitted and failed to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

27. Had Plaintiffs known of the materially adverse information which was not disclosed by Defendants, they would not have purchased the WCI contracts for sale at all, or not at the artificially inflated prices, and would not have sustained damages.

WHEREFORE, Plaintiffs pray for judgment as follows:

a. a judgment declaring the conduct of the Defendants to be in violation of law as set forth herein;

b. a judgment awarding Plaintiffs compensation for the damages which it has sustained as a result of the Defendants' unlawful conduct stated above;

c. a judgment awarding Plaintiffs' reasonable attorneys' fees, experts' fees, interest and cost of suit; and

d. such other and further relief as this Court may deem just.

## COUNT II - FRAUDULENT INDUCEMENT

28. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 18 as if set forth fully at length.

29. This claim is asserted by all Plaintiffs against all Defendants.

30. At all times relevant hereto, Defendants were acting by and through duly authorized agents, servants, employees, representatives, owners, or other representatives, who were authorized and acting within their scope of employment.

31. Defendants, through their sales agents or other representatives and through published advertising, made material misrepresentations to Plaintiffs in an effort to induce the execution of the sales contracts.

32. Defendants made these representations with the knowledge that they were false, or under circumstances in which Defendant should have known they were false.

33. Defendants intended Plaintiffs to rely on said false or misleading material representations intending to induce Plaintiffs to enter into the contract and investment.

34. Plaintiffs reasonably and justifiably relied upon the false and misleading representations made by Defendants in entering into the contract.

35. Plaintiffs have suffered damages as a result of misrepresentations made in the inducement for the sale and purchase of the service.

WHEREFORE, Plaintiffs pray for judgment as follows:

   a. a judgment declaring the conduct of the Defendants to be in violation of law as set forth herein;

   b. a judgment awarding Plaintiffs compensation for the damages which it has sustained as a result of the Defendants' unlawful conduct stated above;

   c. a judgment awarding Plaintiffs' fees, interest and cost of suit; and

   d. such other and further relief as this Court may deem just.

## COUNT III – NEGLIGENT MISREPRESENTATION

36. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 18 as if set forth herein at length.

37. This claim is asserted by all Plaintiffs against all Defendants.

38. At all times relevant hereto, Defendants had a duty to advertise, merchandise, distribute, represent a product, and to disclose to Plaintiffs known or ascertainable information concerning construction time, delays, profit expectations, and view obstructions, and to protect Plaintiffs from receiving a defective product incapable of meeting the expectations guaranteed by Defendants.

39. At all times relevant hereto, Plaintiffs reasonably relied upon the Defendants to carefully and properly give full and truthful information concerning the execution of the sales contracts.

40. Prior to Plaintiff, Mellon executing the contracts for sale, Defendants knew or had reason to know there had been serious problems with the construction and related

expectations and failed to disclose that defect to Plaintiffs. Further, Defendant knew, or with the exercise of reasonable diligence should have known the true construction plans, profits margins, and building schedules.

41. Defendant intended the Plaintiffs to rely on it giving to Plaintiff a correct and truthful advertisement and making true statements during the oral representations made by Defendants' agents.

42. The aforementioned occurrences, with the resulting losses to the Plaintiffs were caused solely and proximately and exclusively by the wrongful, negligent, willful, and other liability causing conduct of the Defendant, its agents, servants, representatives, employees, owners, generally, and in the following particulars, as more fully set forth herein, and was due in no manner, whatsoever, to any act or failure to act on the parto of the Plaintiff herein, in the Defendants:

  a. failed to truthfully and fully disclose the true building site

  b. failed to disclose true profit margins;

  c. failed to disclose delays in building schedules;

  d. failed to disclose construction problems in adjacent buildings which would cause a delay construction of the Savona;

  e. failed to disclose plan to build a structure in front of the Savona and the plan for obstructing the view from units nos. 501 and 601 at the Savona;

  f. failed to disclose known or knowable delays in the building process;

  g. failed to answer truthfully questions and inquiries relating to the status and operational capacity of the construction;

  h. intentionally mislead Plaintiffs into making an investment and executing the sales contracts;

  i. misstated, or otherwise gave false information about the Savona and the Hamock Dunes Community.

43. As a direct, proximate and reasonably foreseeable result of the negligent, careless, illegal, intentional and other liability causing conduct of the Defendants as set forth above, Plaintiffs have been damaged by the acts of the Defendants.

44. The acts of Defendants in misstating, intentionally giving false information, falsely advertising the development, and attempting to cover up their deceit amount to intentional acts for which punitive damages are awardable. Demand for which is made by reason of this paragraph.

WHEREFORE, Plaintiffs pray for judgment as follows:

a. a judgment declaring the conduct of the Defendants to be in violation of law as set forth herein;

b. a judgment awarding Plaintiffs compensation for the damages which it has sustained as a result of the Defendants' unlawful conduct stated above;

c. a judgment awarding Plaintiffs consequential and punitive damages;

d. a judgment awarding Plaintiffs' fees, interest and costs of suit; and

e. such other and further relief as this Court may deem just.

### COUNT IV - VIOLATION OF FLORIDA DECEPTIVE TRADE PRACTICES ACT

45. Plaintiff, Mellon incorporates by reference the allegations contained in paragraphs 1 through 18 as if set forth herein at length.

46. This is an action for violation of Florida Statutes §§ 501.201, et seq. and it is brought by all Plaintiffs against all Defendants

47. Plaintiffs are consumers as defined in Florida Statute §§ 501.201, et seq. ("Florida Deceptive Trade and Unfair Practices Act").

48. The Florida Deceptive Trade and Unfair Practices Act defines unfair or deceptive acts or practices so that the acts and omissions complained of on the part of the Defendants are acts which are protected.

49. Defendants made false and misleading statements concerning the contracts for sale which Defendants knew or through the exercise of reasonable care or information could have ascertained as untrue or misleading. Said misrepresentations were made or disseminated with the intent or purpose either directly or indirectly of selling the contracts for sale or to induce Plaintiffs to enter into an obligation relating to such contracts. Further, it is alleged Defendants and their employees and agents acted together in a common scheme or plan to keep the general public, consumers and Plaintiff from discovering information relevant to the contracts for sale, said information being of significant and material importance concerning the benefits and value of the contracts. Specifically, Defendant did no openly disclose to Plaintiff the known defects with the contracts and the construction of the Savona tower residences.

50. The acts complained of above are in violation of Florida Deceptive and Unfair Trade Practices Act, entitling Plaintiff to punitive damages.

51. Specifically, the acts of Defendants constituting Deceptive and Unfair Trade Practices include, but are not limited to:

    a. failure to truthfully and fully disclose the true building site in both the advertisements and direct conversation;

    b. failure to disclose true profit margins;

    c. failure to disclose delays in building schedules;

    d. failure to disclose construction problems in adjacent buildings which would cause a delay in construction of the Savona;

    e. failure to disclose plans to build in front of the Savona and the plan for obstructing the view from unit nos. 501 and 601;

    f. failure to disclose known or knowable delays in the building process;

    g. failure to answer truthfully inquiries relating to the status of the Savona's construction;

    h.    intentionally not disclosing information requested when Defendant had a duty to disclose;

    i.    intentionally misleading Plaintiff into making an investment and executing the contracts for sale;

    j.    misstating, or otherwise giving false information about the Savona and the Hammock Dunes Community.

52. The Act further defines unfair of deceptive acts or practices so that a violation of the related Federal Fair Trade Practice Act, 15 U.S.C. §§ 45, et seq., is a violation of Florida's Deceptive and Unfair Trade Practices Act.

53. Defendants have violated the related Federal Fair Trade Practice Act and are therefore in violation of Florida's Deceptive and Unfair Trade Practices Act.

54. As a direct, proximate and reasonably foreseeable result of Defendants' violations of the Florida Deceptive Trade and Unfair Practices Act, Plaintiff has suffered damages.

55. Plaintiff is entitled to and all attorneys' fees incurred in enforcing his rights through the instant litigation pursuant to section 501.210(5) of the Florida Statutes.

56. Plaintiff is entitled to consequential and punitive damages pursuant to section 501.40(5) of the Florida Statutes.

WHEREFORE, Plaintiffs pray for judgment as follows:

    a.    a judgment declaring the conduct of the Defendants to be in violation of law as set forth herein;

    b.    a judgment awarding Plaintiffs compensation for the damages which it has sustained as a result of the Defendants' unlawful conduct stated above;

    c.    a judgment awarding Plaintiffs punitive and consequential damages;

  d.  a judgment awarding Plaintiffs' attorneys fees, reasonable fees, interest and costs of suit; and

  e.  such other and further relief as this Court may deem just.

## DEMAND FOR JURY TRIAL

57. The Plaintiffs demand a jury trial on all issues that are so triable.

Dated this 15 day of September, 2004.

          SALVATORI & WOOD, P.L.

          By: _____
          Casey K. Weidenmiller
          Florida Bar No. 0521035
          Attorneys for Plaintiff
          4001 Tamiami Trail North, Suite 330
          Naples, FL 34103-3060
          239.263.1480
          239.649.1706 Facsimile

## RECEIPT FOR CONDOMINIUM DOCUMENTS

The undersigned acknowledges that the documents checked below have been received or, as to plans and specifications, made available for inspection.

NAME OF CONDOMINIUM: _____SAVONA AT HAMMOCK DUNES, A CONDOMINIUM_____
ADDRESS OF CONDOMINIUM: _____8 Avenue De La Mer, Palm Coast, Florida_____

Place a check in the column by each document received or, for the plans and specifications, made available for inspection.

If an item does not apply, place "N/A" in the column.

| DOCUMENT | RECEIVED |
|---|---|
| Prospectus Text | |
| Declaration of Condominium | X |
| Articles of Incorporation | X |
| By-Laws | X |
| Estimated Operating Budget | X |
| Form of Agreement for Sale or Lease | X |
| Rules and Regulations | X |
| Covenants and Restrictions | X |
| Ground Lease | X |
| Management and Maintenance Contracts for More Than One Year  (There is(is to be) a contract for management) | N/A |
| Renewable Management Contract   (There is(is to be) a contract for management) | |
| Lease of Recreational and Other Facilities to be Used Exclusively by Unit Owners of Subject Condominium | X |
| Form of Unit Lease if a Leasehold | N/A |
| Declaration of Servitude | N/A |
| Sales Brochures | X |
| Phase Development Description (see 718.503(2)(k) and 504(14) | X |
| Lease of Recreational and Other Facilities to be used by unit owners with other condos. | N/A |
| | N/A |

1



EXHIBIT "A"

| | |
|---|---|
| Description of Management for Single, Management for Multiple Condominiums (See 718.503(2)(k) | N/A |
| Conversion Inspection Report | N/A |
| Conversion Termite Inspection Report | N/A |
| Plot Plan | X |
| Floor Plan | X |
| Survey of Land and Graphic Description of Improvements | X |
| Executed Escrow Agreement | X |
| Plans and Specifications | MADE AVAILABLE |

THE PURCHASE AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THE PURCHASE AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF ALL THE DOCUMENTS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER. UNDER SECTION 718.503, FLORIDA STATUTES. THE PURCHASE AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE DOCUMENTS REQUIRED. BUYER'S RIGHT TO VOID THE PURCHASE AGREEMENT SHALL TERMINATE AT CLOSING.

EXECUTED this 20 day of Aug, 2002.

_____
Purchaser or Lessee   M. Richard Mellon

_____
Purchaser or Lessee

2

| Form **W-9**<br>(Rev. December 2000)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |
|---|---|---|

**Please print or type**

Name (See Specific Instructions on page 2.)
M. RICHARD BARRTZE MELLON

Business name, if different from above. (See Specific Instructions on page 2.)

Check appropriate box: ☒ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ..........

Address (number, street, and apt. or suite no.)
116 EDGEMERE WAY S.

City, state, and ZIP code
NAPLES   FL   34105

Requester's name and address (optional)

### Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number: 1 1 9 | 3 4 | 4 7 1 1 5

or

Employer identification number

List account number(s) here (optional)

For U.S. Payees Exempt From Backup Withholding (See the Instructions on page 2.)

### Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here   Signature of U.S. person ▶ [signature]   Date ▶ 5-71-02

### Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Corporations.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**What is backup withholding?** Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or
2. You do not certify your TIN when required (see the Part III instructions on page 2 for details), or
3. The IRS tells the requester that you furnished an incorrect TIN, or
4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or
5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate Instructions for the Requester of Form W-9.

### Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Cat. No. 10231X   Form **W-9** (Rev. 12-2000)

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Caution:** *A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.*

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

### Part I—Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box.

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see *How to get a TIN* below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see *Limited liability company (LLC)* above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note:** *See the chart on this page for further clarification of name and TIN combinations.*

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS's Internet Web Site at www.irs.gov.

If you do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** *Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.*

### Part II—For U.S. Payees Exempt From Backup Withholding

Individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the separate instructions for the Requester of Form W-9.

If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding. Enter your correct TIN in Part I, write "Exempt" in Part II, and sign and date the form.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

### Part III—Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required).

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified state tuition program payments, IRA or MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

### Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 31% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** *If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.*

## NOTICE OF NO BROKERAGE RELATIONSHIP

### IMPORTANT NOTICE

FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES PROVIDE THIS NOTICE TO POTENTIAL SELLERS AND BUYERS OF REAL ESTATE.

You should not assume that any real estate broker or salesperson represents you unless you agree to engage a real estate licensee in an authorized brokerage relationship, either as a single agent or as a transaction broker. You are advised not to disclose any information you want to be held in confidence until you decide on representation.

### NO BROKERAGE RELATIONSHIP NOTICE

FLORIDA LAW REQUIRES THAT REAL ESTATE LICENCEES WHO HAVE NO BROKERAGE RELATIONSHIP WITH A POTENTIAL SELLER OR BUYER DISCLOSE THEIR DUTIES TO SELLERS AND BUYERS.

As a real estate licensee who has no brokerage relationship with you, Hammock Dunes Real Estate Co. and its Associates owe to you the following duties:

1. Dealing honestly and fairly;
2. Disclosing all known facts that materially affect the value of residential real property which are not readily observable to the buyer;
3. Accounting for all funds entrusted to the licensee.

20 Aug 02
(Date)

_____
(Signature)
M. Richard Mellon

_____
(Date)

_____
(Signature)

EQUAL HOUSING
OPPORTUNITY

WE DO BUSINESS IN ACCORDANCE WITH THE FEDERAL FAIR HOUSING LAW
(The Fair Housing Amendment Act of 1988)

SAVONA AT HAMMOCK DUNES, A CONDOMINIUM
PALM COAST, FLORIDA

RESIDENCE PURCHASE CONTRACT

Purchaser(s) __M. Richard Mellon_____

Residence (Unit) # __Savona Unit 501_____

Purchaser SS#/FEI# __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_____ and _____

Purchaser Address: __116 Edgemere Way S, Naples, FL 34105_____

Purchaser Phone:(Home) __(239) 262-4909_____ FAX: _____
            (Local) _____

THIS RESIDENCE PURCHASE CONTRACT (this "Contract") is made and entered into as of the "Effective Date," as such term is defined in Section 25.V. below, by and between (i) WCI COMMUNITIES, INC., a Delaware corporation, whose address is 24301 Walden Center Drive, Bonita Springs, Florida 34134, and whose telephone number is (941) 947-2600 (referred to herein as "Developer" and/or "Seller"), and (ii) the above named person(s) (singularly and collectively, and jointly and severally referred to herein as "Purchaser").

WITNESSETH:

FOR AND IN CONSIDERATION of the mutual covenants, conditions and restrictions, contained in this Contract, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller has agreed to sell and Purchaser has agreed to purchase, upon the following terms and conditions, condominium unit # __501__ (the "Unit"), in Savona at Hammock Dunes, a Condominium (the "Condominium"), a condominium to be created pursuant to the Declaration of Condominium of Savona at Hammock Dunes, a Condominium, to be recorded in the Public Records of Flagler County, Florida, as the same may be amended from time to time (collectively, the "Declaration"), for the total purchase price set forth in Section 1 below.

ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.

ANY PAYMENT IN EXCESS OF 10% OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

1. TOTAL PURCHASE PRICE: $ __950,000.00__

The total purchase price is payable in U.S. Dollars as follows:

A. $ __25,000.00__  Reservation deposit, if applicable, or initial deposit due upon signing of this Contract by Purchaser (the "Initial Deposit");

B. $ __70,000.00__  Deposit (which, together with the Initial Deposit, shall equal 10% of the Total Purchase Price) shall be due on or before __September 4, 2002__ (being the first day following the expiration of the rescission period described in the first paragraph of Section 36 hereof) (the "Second Deposit")

C. $ __95,000.00__  Deposit equal to an additional 10% of the Total Purchase Price due within fifteen (15) days after delivery to Purchaser by Seller of written notice that the building permit for construction of the foundation of the Condominium has been issued (the "Third Deposit"; the Initial Deposit, the Second Deposit and the Third Deposit are sometimes referred to herein collectively as the "Deposits");

D. $ __760,000.00__  The balance of the Total Purchase Price at the "Closing," as such term is defined in Section 3 hereof, by cash or wire transfer of funds (subject to adjustments and prorations as hereinafter set forth). Purchaser is responsible for payment of all fees associated with the wire transfer of any funds.

All checks for Deposits shall be made payable to CHICAGO TITLE INSURANCE COMPANY (or such other title insurance company as Seller may designate from time to time), but shall be mailed or delivered to Seller's

legal\hammock dunes\Savona\purchase agmt 06/10/02                    1